UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KAREN TESTA                              :
                                         :
v.                                       :    C.A. No. 18-00566-WES
                                         :
SALVATORE MANCINI RESOURCE &             :
ACTIVITY CENTER, INC., et al.            :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendants' Motion to Dismiss. (ECF Doc. No. 16). Plaintiff opposes the Motion. (ECF Doc. No. 20). Defendants have filed a Reply Brief. (ECF Doc. No. 23). For the following reasons, I recommend that Defendants' Motion to Dismiss be GRANTED in part as to Count VIII and otherwise DENIED.

**Background**

Plaintiff was previously employed as the Executive Director of the Salvatore Mancini Resource & Activity Center, Inc. ("SMRAC"). SMRAC was a Rhode Island nonprofit corporation that operated the Senior Center for the Town of North Providence. Plaintiff sues her former employer SMRAC, its purported successor-in-interest the Town of North Providence and North Providence's Mayor Charles Lombardi, both individually and in his official capacity.

Plaintiff's Complaint originally contained nine counts alleging various state and federal claims. In her Opposition, Plaintiff voluntarily withdrew[1] Count VIII (Procedural Due Process).

---

[1] Pursuant to Rule 41(a)(2), I recommend that Count VIII be dismissed with prejudice since Defendants invested the time and resources to move for dismissal on substantive grounds prior to the "voluntary withdrawal," and Plaintiff elected to withdraw rather than respond to Defendants' Motion on the merits.

There are eight remaining claims. Counts VII (First Amendment Retaliation) and IX (Equal Protection) are brought against the Town and Mayor Lombardi pursuant to 42 U.S.C. § 1983. Counts I – VI assert state law claims against SMRAC, the Town and/or Mayor Lombardi.

In the instant Motion to Dismiss, the Town and Mayor Lombardi argue, pursuant to Rule 12(b)(6), that the federal constitutional claims, Counts VII and XI, should be dismissed as they do not present plausible claims for which relief can be granted because there were no constitutional rights violations and no recoverable damages. (ECF Doc. No. 16-1 at p. 3). They also argue, pursuant to Rule 12(b)(1), that, after dismissal of the federal claims, no federal question or other subject matter jurisdictional foothold remains in this Court, and thus the state law claims should be dismissed without prejudice. (ECF Doc. No. 16-1 at p. 2).

**Discussion**

**A.    Standard of Review**

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v.Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to

survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

### B.    Summary of Factual Allegations and Arguments

Plaintiff's Complaint is detailed and outlines a course of events unfolding between 2015 and 2017. Her factual allegations must be accepted as true in considering Defendants' Motion to Dismiss. In a nutshell, the Town discontinued its grant funding to SMRAC to operate the Senior Center and decided to fund and operate the Senior Center directly as a Town-run operation. The Town and Mayor Lombardi describe this change simply as a "political decision to stop appropriating money to a not-for-profit corporation" to run the Senior Center. (ECF Doc. No. 16-1 at p. 1). Plaintiff paints a different picture and alleges a pattern of retaliation for exercising her constitutional rights to speech, petition and support a political opponent. Plaintiff claims that the decisions to stop funding SMRAC, single out her unpaid wages for nonpayment, and the refusal to hire her to work at the "new" Town Senior Center were all impermissibly motivated by her constitutionally-protected conduct. (ECF Doc. No. 20-1 at p. 4).

As to Count IX (Equal Protection), Defendants contend that Plaintiff fails to allege a viable "class of one" equal protection claim in accordance with the teachings of Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008). Plaintiff counters that Engquist is inapposite and that the Town

and Mayor Lombardi's willful and bad-faith determination to single out her wage claim for nonpayment under these circumstances states a viable "class of one" equal protection claim.

As to Count VII (First Amendment Retaliation), Plaintiff alleges that she was retaliated against by the Town and Mayor Lombardi for engaging in three constitutionally-protected acts:

(1)  her role in SMRAC's 2015 lawsuit[2] against the Town to restore appropriated grant funding;

(2)  her public political support in 2016 of Mayor Lombardi's primary election opponent; and

(3)  her 2017 filing and pursuit of a defamation lawsuit[3] against Mayor Lombardi.

Defendants argue for various reasons that, even assuming retaliatory motive, none of these acts can support a valid First Amendment retaliation claim as a matter of law.

**C.  Equal Protection**

In Count IX, Plaintiff alleges that the Town and Mayor Lombardi violated her constitutional right to equal protection of the laws. She alleges that the Town and Mayor Lombardi "willfully treat[ed] her differently from other similarly-situated employees with the bad faith intent to deprive her of her wages." (ECF Doc. No. 1 at ¶ 256). She asserts that she was "similarly situated" to SMRAC's other employees and that there was no "rational basis" to treat her differently.[4] Id. at ¶¶ 253, 255.

---

[2] See SMRAC v. Cambio, in his capacity as North Providence Finance Director, Case No. PC-2015-3773 (Prov. County Superior Court).

[3] See Testa v. Lombardi, Case No. PC-2017-4989 (Prov. County Superior Court).

[4] The parties dispute whether or not Plaintiff was paid by the Town for her work for SMRAC in September 2017. Defendants contend that Plaintiff was paid by check in early 2018 at the same time as other former SMRAC employees but never cashed the check and that her "allegation [of non-payment] can be proven to run afoul of the requirements of Rule 11." (ECF Doc. No. 23 at p. 2, n.1). Defendants, however, acknowledge that the veracity of Plaintiff's allegation is "beyond the scope of the present motion to dismiss." Id. While the resolution of this factual dispute may ultimately be dispositive of Count IX, that factual issue is not presently before the Court.

Defendants narrowly argue that Plaintiff's equal protection claim fails because it runs "headlong" into the Supreme Court's decision in Engquist, 553 U.S. 591. (ECF Doc. No. 16-1 at pp. 3-4). Since Engquist is inapposite, Defendants' argument for dismissal of Count IX is unsupported and fails at this stage.

In Engquist, the Court reaffirmed its prior holding in Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam), that an equal protection claim can in some circumstances be sustained absent an allegation of class-based animus, where the plaintiff claims that he has been irrationally singled out as a so-called "class of one." Engquist, 528 U.S. at 601. The Engquist Court, however, concluded that the Olech "class of one" theory of equal protection was not cognizable in the context of public employment decision making. Id. at 607. It concluded that the Olech rule simply did not square with the realities of public employment which necessarily involve individualized and discretionary judgment, and close calls regarding the treatment of "seemingly similarly situated individuals." Id. at 604. Finally, it made clear that its conclusion that the "class-of-one" theory does not apply in the "public employment context" was "all we decide." Id. at 607.

Count IX does not involve public employment decision-making and thus Engquist is inapplicable. The law is clear that a "class of one" equal protection claim is cognizable when a plaintiff alleges that he has been intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008). Plaintiff has sufficiently stated such a claim here.

Defendants alternatively argue for the first time in their Reply Brief that Plaintiff has failed to plead sufficient facts to show that she was "similarly situated in all relevant respects" with other SMRAC employees. See Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) (emphasis in original).

First, this new substantive argument was improperly presented in the first instance in Defendants' Reply Brief. See Local Rule CV 7(a)(4). While Defendants mentioned the issue in their initial Brief, it was not substantively briefed, and Defendants based their argument for dismissal narrowly on the Engquist case. (See ECF Doc. No. 16-1 at p. 4).[5]

Second, Plaintiff has sufficiently alleged at the pleading stage that she was "similarly situated," and Defendants' factual attack on that allegation is more properly presented under Rule 56. Defendants argue that Plaintiff's status as SMRAC Executive Director employed pursuant to an individual employment contract is not "similarly situated" to the status of SMRAC's other rank-and-file employees working under the terms of a collective bargaining agreement. The law does not require "exact correlation" but makes a "relevant comparison," i.e., "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Barrington Cove, 246 F.3d at 8. While a non-union Executive Director is not similarly situated in many respects to unionized rank-and-file employees, they may be similarly situated in some respects such as being former employees with unsecured wage claims against their former employer. Plaintiff has stated a plausible allegation that she was "similarly situated" in this context, and the Court declines Defendants' invitation to undertake a factual evaluation in the context of this Rule 12(b)(6) Motion.

### D.     First Amendment Retaliation

In Count VII, Plaintiff alleges that the Town and the Mayor retaliated against her for engaging in activity protected by the First Amendment. The parties dispute the applicable legal standard and whether or not Plaintiff has alleged any viable retaliation theory.

---

[5] Defendants asserted that "even ignoring the fact that the others were not similarly situated does not make [Plaintiff's] claim plausible in light of the Engquist rule." (ECF Doc. No. 16-1 at p. 4) (emphasis added).

First, as to the legal standard, Defendants advocate for application of the so-called "public concern" test. Defendants assert that, to establish First Amendment retaliation, a plaintiff must show that: "1) he or she engaged in protected conduct, such as speaking as a citizen on a matter of public concern; 2) that his/her interest in speaking outweighed the government's interest; and 3) that his/her speech was a 'substantial or motivating factor' in an adverse employment decision." (ECF Doc. No. 16-1 at p. 18) (quoting Rodriguez v. Municipality of San Juan, 659 F.3d 168, 180 (1st Cir. 2011)). Plaintiff counters that the public concern and interest-balancing elements are inapplicable here because she was not a governmental employee. She posits that she only need plead that (1) she engaged in constitutionality-protected conduct; (2) that she suffered an adverse action; and (3) that the constitutionally-protected conduct was a substantial or motivating factor for the adverse action. (ECF Doc. No. 20-1 at p. 6). After reviewing the relevant case law, the Court concludes that Plaintiff is correct. See, e.g., Wentworth Precious Metals v. City of Everett, No. 11-10909-DPW, 2013 WL 441094 at *4 (D. Mass. Feb. 4, 2013); and Hickson v. Bowler, No. 08-255-B-W, 2009 WL 742737 (D.Me. March 17, 2009).

Plaintiff was never employed by the Town and was acting at relevant times as either a private citizen or an agent of SMRAC, a private entity. In Van Deelen v. Johnson, 497 F.3d 1151, 1157 (10th Cir. 2007), the Tenth Circuit Court of Appeals held that the "public concern" test is applicable only to public employee expression and not to the "broader context of speech by private citizens." The "public concern" test was enunciated by the Supreme Court in Pickering v. Bd. Of Educ., 391 U.S. 563, 568 (1968), a case that considered whether a public school teacher's criticism of his public employer was protected speech.

The Supreme Court in Pickering reasoned that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in

connection with regulation of the speech of the citizenry in general." Id. To balance the "interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," it adopted a public concern balancing test applicable to First Amendment retaliation claims. Id. To satisfy this test, the public employee must show that the speech in question involved a matter of public concern, and that the public employee's interest in the expression outweighs the governmental employer's interest in regulating the speech. Id. Because a private citizen's speech does not implicate these governmental interests, the Tenth Circuit in Van Deelen found that the "public concern" balancing test was inapplicable to a private citizen First Amendment retaliation claim. 497 F.3d at 1156-1157. It reasoned that to apply the "public concern" test outside the public employer setting "would require us to rend it from its animating rationale and original context." Id. Accordingly, this Court concludes that the "public concern" test is inapplicable to Plaintiff's allegations against the Town and Mayor Lombardi in Count VII, and all of Defendants' arguments flowing therefrom are misplaced.

As to the protected activity prong of the test, Defendants argue for various factual and legal reasons[6] (including the inapplicable "public concern" test) that the 2015 and 2017 lawsuits do not qualify. However, Defendants do not, and cannot in good faith, contend that Plaintiff's factual averments regarding her public political support in 2016 of Mayor Lombardi's primary election

---

[6] For instance, Defendants argue that the 2017 defamation lawsuit is a "frivolous claim not subject to First Amendment protection." (ECF Doc. No. 23 at p. 19); see also Rosado-Quinones v. Toledo, 528 F.3d 1, 7 (1st Cir. 2008) (noting the absence of any First Amendment right to file a meritless or sham lawsuit); and Bill Johnson's Rest., Inc. v. NLRB, 461 U.S. 731, 743 (1983) ("baseless litigation is not immunized by the First Amendment right to petition"). However, the issue of whether or not the 2017 suit is frivolous is a factual one that cannot be decided in this context. In addition, the First Circuit has recognized that "[o]ur constitutional system gives every citizen the right to seek redress in the courts…without fear that recourse to the law will make that citizen a target for retaliation." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004) (citation omitted). Thus, Plaintiff has stated a plausible protected activity claim based on the 2017 lawsuit.

opponent was not protected by the First Amendment. Thus, Plaintiff has presented sufficient factual allegations in Count VII to state a plausible protected activity claim.

As to adverse action, Defendants again present various factual and legal arguments that Plaintiff has failed to allege any cognizable harm. First, as to the failure to hire claim, Defendants argue in their initial Brief that the Executive Director position is a policy-oriented position "without protection from adverse political decision making." (ECF Doc. No. 16-1 at p. 23). However, in their Reply Brief, Defendants shift gears and argue that Plaintiff has not pointed to a single job for which she was "eligible" and; without pointing to a particular job, she "cannot sufficiently allege or prove that the Town actually refused to hire her." (ECF Doc. No. 23 at p. 24).

The issue of whether or not the Senior Center Director is a policy-making position subject to a political affiliation requirement is a factual one not generally amenable to resolution on a Rule 12(b)(6) motion. See Flynn v. City of Boston, 140 F.3d 42 (1st Cir. 1998); see also Elrod v. Burns, 427 U.S. 347, 362-363 (1976); and Branti v. Finkel, 445 U.S. 507, 518 (1980). In Cornavaca v. Rios-Mena, No. 13-1767 (SEC), 18 F. Supp. 3d 105, 113 (D.P.R. May 9, 2014), the District Court described the issue as a "fact-intensive" determination of a position's functions "better suited for summary-judgment adjudication." See also Ramirez-Nieves v. Municipality of Canovanas, No. 16-1749 (DRD), 2017 WL 1034689 at *8 (D.P.R. March 16, 2017). "Actual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions," Olmeda v. Ortiz-Quinonez, 434 F.3d 62, 66 (1st Cir. 2006) (internal citation omitted). Here, the actual functions of Plaintiff's former position as Executive Director of SMRAC are not readily ascertainable from the Complaint and, more to the point, the Complaint is silent as to the functions of the Director of the "new" Town-run Senior Center. While

Defendants may ultimately have a strong argument that the Director position is policy-making, it is a factual argument that cannot be determined on the face of Plaintiff's Complaint.

As to Defendants' second argument that Plaintiff has failed to allege that "she ever applied for a specific job," (ECF Doc. No. 23 at p. 24), it is reasonable to infer from the totality of Plaintiff's allegations that the "specific job" was the Director position she had held for nearly twenty years. Also, the absence of any allegation of a specific, failed application for Town employment is not dispositive since Plaintiff alleges that the Town and Mayor Lombardi were initially "willing to hire all of the SMRAC…employees, including [Plaintiff] to operate the Senior Center after the Town took over" and then "reversed course, refusing to hire [Plaintiff]" after she filed the 2017 lawsuit. (ECF Doc. No. 1 at ¶ 213). She alleges that "[s]hortly after the close of the [SMRAC] Purchase Agreement, [Mayor] Lombardi publically [sic] announced that [Plaintiff] would not be employed by the Town at the Senior Center." Id. at ¶ 92.

At this pleading stage, Plaintiff has sufficiently alleged protected activity, adverse action and retaliatory motive to withstand Defendants' Rule 12(b)(6) challenge to Count VII. Thus, Defendants' Motion to Dismiss Count VII should be denied without prejudice to further review by the Court at the Rule 56 stage.

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (ECF Doc. No. 16) be GRANTED in part as to Count VIII (see supra, p. 1, n.1) and otherwise DENIED as to all other Counts.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by

the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 8, 2019